```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA


ROBERT NAMER                                    CIVIL ACTION


VERSUS                                          NO. 12-2232


BROADCASTING BOARD OF GOVERNORS                 SECTION "B"(5)
AND VOICE OF AMERICA
```

### ORDER AND REASONS

Before the Court is Defendants' Motion to Dismiss Counts I, II, and V of the Complaint or, in the Alternative, for Summary Judgment. (Rec. Doc. No. 11). In response, Plaintiff filed an Opposition to Defendants' motion. (Rec. Doc. No. 19). Defendants filed a reply thereto. (Rec. Doc. No. 23). Accordingly, and for the reasons enumerated below **IT IS ORDERED** that Defendants' Motion to Dismiss Counts I, II, and V or, in the Alternative, for Summary Judgment be **GRANTED.**

### Cause of Action and Facts of the Case:

This case arises out of the use of the phrase "Voice of America" as the name of Plaintiff's business and the use of the domain name "www.voiceofamerica.com" for Plaintiff's website. In 1968, Plaintiff Namer ("Plaintiff" or "Namer") began operating as the "Voice of America" in seminars, lectures, print, radio, and television in the United States and in the State of Louisiana.

1

(Rec. Doc. No. 1, at 3). In 1977, Namer formed the corporation Voice of America, Inc. ("Voice of America") in the State of Louisiana. Namer is the president of Voice of America and owns 100% of all shares of its stock. (Rec. Doc. No. 1, at 3). In 1991, Namer began airing a radio program called "Voice of America" on various radio stations. Id. These broadcasts were also aired over the Internet and were exclusively limited to the continental United States. Id. In 1998, Namer legally purchased the domain name "www.thevoiceofamerica.com." Id.

On February 7, 2000, the Broadcasting Board of Governors ("BBG") corresponded with Namer asserting that they had the legal right to use the name "Voice of America" and demanded that Namer cease using the name. (Rec. Doc. No. 1-5). Namer responded that he had purchased the domain name in 1998. Id. BBG did not take any action at that time.

On July 22, 2005, BBG applied for its word mark number 3205170 for "Voice of America." (Rec. Doc. No. 1-6). Thereafter, the word mark was published for opposition on November 21, 2006 and was registered on February 6, 2007 with the U.S. Patent and Trademark office. Id. In April 2011, Namer received a letter from the BBG alleging, among other things, that it had used the phrase "Voice of America" since before World War II, and that starting in 1990, all U.S. Governmental international broadcasting services began to work more closely together. The letter indicated that Namer's website

2

audiences could be confused by the similarities between Mr. Namer's use of the domain "www.thevoiceofamerica.com" and BBG's alleged "Voice of America" service mark.

On November 9, 2011, the BBG submitted a Complaint to the National Arbitration Forum pursuant to the Uniform Domain Name Dispute Resolution Policy ("URDP") seeking transfer of the domain name "thevoiceofamerica.com" to the BBG. (Rec. Doc. No. 11-1, at 2). In a final decision dated December 21, 2011, the Forum panel ordered the transfer of the domain name to the BBG. (Rec. Doc. No. 11-1, at 2; Rec. Doc. No. 1, Ex. G). The arbitrator opined that the domain name, "www.thevoiceofamerica.com" was identical or confusingly similar to the word mark of BBG; that Namer had no legitimate interest in the domain name; and that Namer registered and used the disputed domain name in bad faith. (Rec. Doc. No. 1, at 8). Namer alleges that no consideration of his many years of work and expense was proposed. Id.

On January 4, 2012, Plaintiff Robert Namer filed a civil action to prevent transfer of the domain name registration "thevoiceofamerica.com" to Defendant BBG, but that case was dismissed on July 12, 2012, due to plaintiff's failure to effect proper service of process. (Rec. Doc. No. 11-1, at 2; *see Namer v. Broadcasting Bd. of Governors*, Civ. No. 12-14, 2010 WL 3597081 at *1 (E.D.La. August 20, 2012)).

On September 7, 2012, plaintiff commenced this lawsuit by

3

filing a "COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF." (Rec. Doc. No. 1). As to a remedy, the Complaint requests, *inter alia*, that the Court grant plaintiff's Complaint for Declaratory Judgment and declare that Namer has the legal right to continue doing business under the name "Voice of America." (Rec. Doc. No. 1, at 17).

Plaintiff contends that his use of "Voice of America" and "www.thevoiceofamerica.com" is protected by the fair use defense articulated in 15 U.S.C. § 1115(b)(4). (Rec. Doc. No. 1, at 10). Defendants contends that Plaintiff is unable to satisfy the requirement that his use of "Voice of America" and "www.thevoiceofamerica.com" constitutes use other than as a trademark and thus cannot invoke the fair use defense. (Rec. Doc. No. 11-1, at 10). Defendants also contend that Count I of the complaint should be dismissed for failure to state a claim upon which relief can be granted and that Count V of the Complaint should be dismissed for lack of subject matter jurisdiction. Plaintiff did not respond to Defendants' latter two contentions.

**Law and Analysis**:

A. Summary Judgment

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any

4

affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas*, 139 F.3d 532, 536 (5th Cir. 1998). "[T]he issue of material fact required by Rule 56 to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The moving party bears the initial responsibility of informing the district court of the basis for its motion. *Celotex*, 477 U.S. at 323. The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (citing Fed. R. Civ. P.

56). If and when the movant carries this burden, the nonmovant must then go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).

B. The Fair Use Defense

15 U.S.C. § 1115(b)(4) provides a defense to a claim of infringement on a registered mark where "the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, . . . of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin." 15 U.S.C.A. § 1127 defines the term "trademark" to include any word, name, symbol, or device, or any combination thereof used "to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the *source of the goods*, even if that source is unknown." (emphasis added).

The "fair-use" defense, articulated in 15 U.S.C 1115(b)(4) is one of several permissible defenses to use of an "incontestable" mark. *See Venetianaire Corp. v. A & P Import Co.*, 429 F.2d 1079, 1081-82 (5th Cir. 1970). "The fair-use defense allows a party to

use a term in good faith to describe its goods or services, but only in actions involving descriptive terms and only when the term is used in its descriptive sense rather than in its trademark sense." *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 271 (5th Cir. 1999). The defense prevents a trademark registrant from "appropriat[ing] a descriptive term for his exclusive use and so prevent[ing] others from accurately describing a characteristic of their goods." *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1185 (5th Cir. 1980); *see also Citrus Grp., Inc. v. Cadbury Beverages, Inc.*, 781 F. Supp. 386, 390-91 (D. Md. 1991)("It is not a trademark infringement to use words in their ordinary, rather than in their special, trademark meaning.").

In *Soweco, Inc. v. Shell Oil Co.*, the Fifth Circuit ruled that a company that used the word "larvicide" in connection with a product that was meant for killing fly larvae was a fair use of the term to describe the product and was thus protected under § 1115(b)(4). 617 F.2d at 1186-87. We do not have a similarly descriptive term before us. Plaintiff Namer's website is essentially a place to access various news articles - the phrase "Voice of America" is not as obviously descriptive of a compilation of news articles as the term "larvicide" is in referring to a product that kills larvae. Furthermore, where the term is used " *as being indicative of source or origin* of that product, the term is not being used as a trademark." *Citrus Grp.*, 781 F. Supp. at 390-91

(citing *Schmid Laboratories v. Youngs Drug Products Corp.*, 482 F.Supp. 14, 21 (D.N.J.1979) (emphasis in original); *see also Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1423 (9th Cir. 1984)(examining whether a term was used to "associate it with a manufacturer" and consequently, constituted a trademark). Namer contends that he "uses the 'Voice of America' as a purely descriptive means in which users can access [his] goods and services." (Rec. Doc. No. 1, at 11). Additionally, the Voice of America homepage states that "THEVOICEOFAMERICA.com is *America's news and information center* for the 21st century. Thevoiceofamerica.com brings news, information, and commentary to the world." (Rec. Doc. No. 11-2, at 3). Plaintiff's account of his use of the phrase demonstrates that it is intended to identify the source of the goods and where they can be accessed. To say "thevoiceofamerica.com brings news..." is not to say that the news itself is "the Voice of America" but rather to describe the website as a locus for news. Thus, in this case, the phrase is being used to identify the source of the news.

Furthermore, other courts have found that use of a term in a web address is not descriptive. In *TCPIP Holding Co., Inc. v. Haar Communications, Inc.*, 244 F.3d 88, 104 (2d Cir. 2001), the holder of the trademark "The Children's Place" brought suit alleging that the creator of portal on the internet was liable for infringement for using "thechildrensplace.com" as the address/name of its

website. The court found that this use was simply not an adjectival - rather is was certainly a use as a mark. *Id.* The court noted that had the Defendant named the website differently but referred to it in publicity materials as "a children's place" the outcome may have been different. Similarly, the use of "thevoiceofamerica.com" is not adjectival - it designates the address where Namer's goods can be found.

Additionally, courts have noted that "indications of trademark use include whether the term is used as a "symbol to attract public attention." *JA Apparel Corp. v. Abboud,* 568 F.3d 390, 400 (2d Cir. 2009). This can be demonstrated by "the lettering, type style, size and visual placement and prominence of the challenged words." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1040 (9th Cir. 2010); *see also Packman v. Chicago Tribune Co.,* 267 F.3d 628, 639 (7th Cir. 2001) (noting that a newspaper's distinctive masthead, which appeared prominently on the front page of the paper, identified the source of the products.)

In the case at hand, Plaintiff's website has a banner that runs across the top of the homepage. The banner has portions of an American flag as its background and "THEVOICEOFAMERICA.COM" runs across the banner. Additionally, a circle that contains an animation of a stylized eagle and the words "Voice of America" running along the inside of the top half of the circle, above the

eagle, is located at the right end of the banner. (See Rec. Doc. No. 11-2, at 3, 39). That banner is essentially a masthead and the circle containing the phrase and the eagle is a symbol of the organization that reappears in other parts of the website. Thus, Plaintiff has failed to demonstrate that there exists an issue of material fact as to whether his use of the phrase "the Voice of America" and "[www.thevoiceofamerica.com](www.thevoiceofamerica.com)" is as a mark and consequently, he cannot invoke the fair use defense under 15 U.S.C. § 1115(b)(4).

### C. Counts 1 and 5 of Plaintiff's Complaint

As Plaintiff's response to Defendants' Motion to Dismiss Counts I, II and V of the Complaint or, in the Alternative, for Summary Judgment has failed or declined to respond to Defendants' allegations as to Counts 1 and 5 of the complaint, **IT IS ORDERED** that those Counts are **DISMISSED**.

Accordingly, and for the reasons pronounced above, **IT IS ORDERED** that Defendants' Motion to Dismiss Counts I, II, and V of the Complaint or, in the Alternative, for Summary Judgment (Rec. Doc. No. 11) is **GRANTED.**

New Orleans, Louisiana, this 10th day of September, 2013.

UNITED STATES DISTRICT JUDGE