## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| ROBERT NAMER,<br>Plaintiff (counterclaim defendant),<br><br>     v.<br><br>BROADCASTING BOARD OF<br>GOVERNORS and VOICE OF AMERICA,<br>Defendants (counterclaim plaintiff). | )<br>)<br>)<br>) Civil Action No. 2:12-cv-2232 ILRL-MBN<br>)<br>) Section "B," Mag. 5<br>)<br>) Judge Lemelle<br>)<br>) Magistrate Judge North<br>)<br>)<br>) |

## MEMORANDUM IN SUPPORT OF
## <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

KENNETH POLITE, JR.
United States Attorney

SHARON D. SMITH
Assistant United States Attorney
United States Attorney's Office
Eastern District of Louisiana

650 Poydras Street, Suite 1600
New Orleans, Louisiana   70130



May 22, 2014

STUART F. DELERY
Assistant Attorney General

JOHN FARGO
Director

DAVID M. RUDDY, T.A.
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C.    20530
Telephone:    (202) 353-0517
Facsimile:    (202) 307-0345
Email: david.ruddy@usdoj.gov
Attorneys for the United States

TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

TABLE OF EXHIBITS .................................................................................................. vi

STATEMENT OF THE ISSUES .................................................................................... 1

STATEMENT OF THE CASE ....................................................................................... 1

ARGUMENT ................................................................................................................. 4

I.      THE LEGAL STANDARD FOR SUMMARY JUDGMENT .......................... 4

II.     BURDEN OF PROOF AND ELEMENTS ....................................................... 5

        A.     Issue 1 -- Federal Trademark Infringement ......................................... 5
        B.     Issue 2 – Laches .................................................................................. 5
        C.     Issue 3 – Genericness .......................................................................... 6
        D.     Issue 4 – Injunctive Relief .................................................................. 6

III.    ROBERT NAMER HAS INFRINGED THE GOVERNMENT'S SERVICE MARK ...... 6

        A.     (1) the type of mark allegedly infringed ............................................. 8
        B.     (2) the similarity between the two marks ............................................. 8
        C.     (3) the similarity of the products or services ....................................... 9
        D.     (4) the identity of the retail outlets and purchasers ............................ 9
        F.     (6) the accused infringer's intent ....................................................... 9
        G.     (7) any evidence of actual confusion ................................................. 11
        H.     (8) the degree of care exercised by potential purchasers ................... 13
        I.     The Digits of Confusion support summary judgment in favor of Defendants ..... 13

IV.     THE DISCOVERY OF PLAINTIFF'S WEBSITE IN 2011
        AND THE DOCTRINE OF PROGRESSIVE ENCROACHMENT
        REBUTS ANY CLAIM NAMER HAS FOR LACHES ................................. 14

V.      NAMER CANNOT MEET HIS BURDEN TO OVERCOME THE STRONG
        PRESUMPTION OF VALIDITY HERE BECAUSE HE HAS PRODUCED NO
        EVIDENCE OF GENERICNESS, EXPERT OR OTHERWISE ................... 16

VI.     DEFENDANTS WOULD BE IRREPARABLY HARMED IF NAMER'S
        INFRINGEMENT WAS PERMITTED TO CONTINUE ............................... 17

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................................ 4

*Angel Flight of Georgia, Inc. v. Angel Flight America, Inc.*,
   522 F.3d 1200 (11th Cir. 2008) ............................................................................. 18

*Audi AG v. D'Amato*,
   469 F.3d 534 (6th Cir. 2006) .................................................................... 6, 17, 19

*Beef/Eater Restaurant, Inc. v. James Burrough, Ltd.*,
   398 F.2d 637 (5th Cir. 1968) ........................................................................... 5, 11

*Board of Supervisors for Louisiana State University*
   *Agricultural and Mechanical College v. Smack Apparel Co.*,
   550 F.3d 465 (5th Cir. 2008) .............................................................................. 6, 7

*Brookfield Communications, Inc. v. West Coast Entertainment Corp.*,
   174 F.3d 1036 (9th Cir. 1999) ....................................................................... passim

*CCA and B, LLC v. F ? W Media Inc.*,
   819 F. Supp. 2d 1310 (N.D. Ga. 2011) ................................................................. 11

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................................ 4

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006) .................................................................................... 6, 17, 19

*Exxon Corp. v. Texas Motor Exchange of Houston, Inc.*,
   628 F.2d 500 (5th Cir. 1980) ................................................................................ 11

*Grotrian v. Steinway*,
   365 F. Supp. 707 (S.D.N.Y. 1973) ....................................................................... 13

*Henri's Food Products Co. Inc. v. Kraft. Inc.*,
   717 F.2d 352 (7th Cir. 1983) ................................................................................ 13

*Humble Oil v. American Oil Co.*,
   405 F.2d 803 (8th Cir. 1969) ................................................................................ 12

*iii*

*James Burrough Ltd. v. Lesher*,
 309 F. Supp. 1154 (S.D. Ind. 1969) ........................................................ 12

*James Burrough Ltd. v. Sign of the Beefeater, Inc.*,
 540 F.2d 266 (7th Cir. 1976) .................................................................. 12

*Jockey Int'l, Inc. v. Burkard*,
 185 U.S.P.Q. 201 (S.D. Cal. 1975) .......................................................... 12

*Miles Labs. Inc. v. Naturally Vitamin Supplements. Inc.*,
 1 U.S.P.Q.2d 1445 (T.T.A.B. 1987) ........................................................ 12

*Namer v. Broadcasting Bd. of Governors*,
 Civ. No. 12-14, 2012 WL 3597081 (E.D. La. 2012) ................................ 2

*National Business Forms & Printing, Inc. v. Ford Motor Co.*,
 671 F.3d 526 (5th Cir. 2012) .................................................................... 7

*In re Northland Aluminum Products, Inc.*,
 777 F.2d 1556 (Fed. Cir. 1985) ........................................................ 6, 17

*ProFitness Physical Therapy Center v. Pro-Fit Orthopedic
 and Sports Physical Therapy P.C.*,
 314 F.3d 62 (2d Cir. 2002) ...................................................................... 16

*RSR Corporation v. International Insurance Company*,
 612 F.3d 851 (5th Cir. 2010) .................................................................... 4

*Schering Corp. v. Pfizer Inc.*,
 189 F.3d 218 (2d Cir. 1999) .................................................................... 11

*Scott Fetzer Co. v. House of Vacuums Inc.*,
 381 F.3d 477 (5th Cir. 2004) .................................................................... 7

*Society of Fin. Examiners v. National Ass'n of Certified Fraud Examiners*,
 41 F.3d 223 (5th Cir. 1995) ...................................................................... 7

*Starbucks Corp. v. Samantha Lundberg*,
 Civ. No. 02-948, 2005 WL 3183858 (D. Or. November 29, 2005) ......... 12

*Tandy Corp. v. Malone & Hyde, Inc.*,
 769 F.2d 362 (6th Cir. 1985) .................................................................. 16

*Westchester Media v. PRL USA Holdings, Inc.*,
 214 F.3d 658 (5th Cir. 2000) .................................................................... 7

*WSM, Inc. v. Tennessee Sales Co.*,
  709 F.2d 1084 (6th Cir. 1983) ................................................................................... 5

## **Statutes**

15 U.S.C. § 1053........................................................................................................ 6

15 U.S.C. § 1114............................................................................................... 1, 5, 6, 13

15 U.S.C. § 1115........................................................................................................ 5

15 U.S.C. § 1116........................................................................................................ 1

22 U.S.C. § 6202...................................................................................................... 20

## **Other Authorities**

Fed. R. Civ. P. 56................................................................................................... 1, 4

J. THOMAS MCCARTHY, 2 MCCARTHY ON TRADEMARKS (4th ed.2014)..... 6, 15, 16, 17

# TABLE OF EXHIBITS

1. STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1

2. Service Mark Reg. No. 3,205,170.................................................................................DA1

3. Excerpts of Prosecution History for Reg. No. 3,205,170 ..............................................DA3

4. Dwight D. Eisenhower: "World Broadcast in Observance of
   Fifteenth Anniversary of Voice of America.," February 25, 1957 ..............................DA88

5. PLAINTIFF'S AMENDED AND SUPPLEMENTAL RESPONSES TO BBG'S
   DISCOVERY dated May 16, 2014.................................................................................DA90

6. Namer Deposition Transcript, April 29, 2014 ..........................................................DA94

7. <thevoiceofamerica.com> October 10, 2011..............................................................DA192

8. <thevoiceofamerica.com> December 22, 2011 .........................................................DA204

9. <thevoiceofamerica.com> August 19, 2011 ..............................................................DA216

10. <hottalkradio.com> March 12, 2014 .......................................................................DA229

11. Declaration of DANIEL DZARA ............................................................................DA243

12. Expert Report (and Exhibits) of Dr. Bruce Isaacson .................................................DA245

13. Ltr of April 21, 2011 to Plaintiff.............................................................................DA551

14. Declaration of STEVEN SPRINGER.......................................................................DA553

15. PLAINTIFF'S RESPONSES TO DEFENDANT'S
    FIRST AND SECOND SETS OF INTERROGATORIES
    AND REQUESTS FOR PRODUCTION dated April 27, 2014 .................................DA560

The United States (the government), on behalf of the named defendants in this matter, moves pursuant to Fed. R. Civ. P. 56 for summary judgment in its favor.

## STATEMENT OF THE ISSUES

1.      Whether there is a genuine dispute as to any material facts precluding summary judgment that Robert Namer has infringed the government's service mark VOICE OF AMERICA pursuant to 15 U.S.C. § 1114 by and thorough the websites <thevoiceofamerica.com> and <hottalkradio.com>;

2.      Whether there is a genuine dispute as to any material facts supporting Robert Namer's equitable defense of laches where plaintiff cannot establish that the government had notice of his websites before 2011 and any notice the government had of Plaintiff's radio program between 2000 and 2005, when it ended, does not bar the government's right to prevent plaintiff's expanded worldwide infringement on the internet;

3.      Whether plaintiff can demonstrate a triable issue of fact in support of the defense of Trademark invalidity for genericness; and;

4.      Whether there is a genuine dispute as to any material facts precluding summary judgment that Robert Namer's continued infringement of the government's service mark VOICE OF AMERICA would cause irreparable harm if permitted to continue, thereby justifying injunctive relief pursuant to 15 U.S.C. § 1116.

## STATEMENT OF THE CASE

The Broadcasting Board of Governors (BBG) submitted a Complaint to the National Arbitration Forum on November 9, 2011, pursuant to the Uniform Domain Name Dispute

Resolution Policy ("UDRP")[1] seeking transfer of the domain name "thevoiceofamerica.com" to the Broadcasting Board of Governors.   *See* Docket No. 1-7 (Complaint Ex. G) at 2-3 (detailing "Procedural History").   In a final decision dated December 21, 2011, the Forum panelist ordered the transfer of the domain name to the BBG.   Docket No. 1-9 (Complaint Ex. G) at 5.   The arbitrator opined that the domain name, " www.thevoiceofamerica.com " was identical or confusingly similar to the word mark of BBG; that Namer had no legitimate interest in the domain name; and that Namer registered and used the disputed domain name in bad faith.   Rec. Doc. No. 1, at 8.

On January 4, 2012, Plaintiff Robert Namer filed a civil action to prevent transfer of the domain name registration, "thevoiceofamerica.com" to defendant, but that case was dismissed on July 12, 2012, due to plaintiff's failure to effect proper service of process.   *See Namer v. Broadcasting Bd. of Governors*, Civ. No. 12-14, 2012 WL 3597081 at *1 (E.D. La. August 20, 2012).   As Admitted in ¶ 14 of Plaintiff's Answer to Defendant's Counterclaim, *see* Rec. Doc. No. 40, on September 17, 2012, a representative of Tucows, Inc., the Registrar for the domain name <thevoiceofamerica.com>, informed the BBG and Namer that the UDRP decision of December 21, 2011, would be implemented transferring said domain name to the BBG.   The domain name has since been transferred but remains inaccessible and in a locked state by Tucows, Inc., pending resolution of the instant civil action.   *See also* DEFENDANTS' STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1 (hereinafter, SOF) at ¶ 53.

---

[1] The National Arbitration Forum adjudicates disputes pursuant to the Uniform Domain Name Dispute Resolution Policy ("UDRP") promulgated by the Internet Corporation for Assigned Names and Numbers ("ICANN").   The UDRP policy establishes a procedure for the resolution of disputes relating to the internet domain names accused to be identical or confusingly similar to another party's legal trademark rights.   *See* http://www.icann.org/en/help/dndr/udrp.

On September 7, 2012, plaintiff commenced this lawsuit by filing a "COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF."   Docket No. 1, September 7, 2012 (hereinafter "Complaint").   In an Order dated September 10, 2013, the Court granted Defendants' Motion to Dismiss Counts I, II, and V of the Complaint or, in the Alternative, for Summary Judgment.   *See* Rec. Doc. No. 33.   Thereafter, Defendants Answered the Complaint and submitted a Counterclaim for trademark infringement under 15 U.S.C. § 1114.   *See* Rec. Doc. No. 34.   Plaintiff filed an Answer to the Counterclaim on December 13, 2013.   *See* Rec. Doc. No. 40.

As Admitted in ¶ 5 of Plaintiff's Answer to Defendant's Counterclaim, *see* Rec. Doc. No. 40, the BBG is the owner of United States Patent and Trademark Office Registration Number 3,205,170.   *See also* SOF, ¶ 5.   Plaintiff has admitted that he owned and maintained both the website www.thevoiceofamerica.com and the website www.hottalkradio.com.   *See* SOF at ¶¶ 10-12 (DA90[2], DA111-112).   Paragraph 31 of the Complaint in this action expressly admits that Namer is "using 'Voice of America' to describe the domain address which consumers can access his goods and services which pertain to news, broadcasting, individual expression, and affiliate advertising."   Complaint at ¶31.

The key foundational evidence in this case comprises various examples of the two websites referenced above.   Specifically, the government relies on three copies of the website <thevoiceofamerica.com> as it existed on October 10, 2011, December 22, 2011, and August 19, 2011.   *See* SOF, ¶¶ 13-15 (DA192-228), *see also* SOF, ¶ 16 (DA243-44 (Dzara Decl. at ¶¶ 5, 7)). In addition, the government relies on a copy of the website <hottalkradio.com> as it existed on March 12, 2014.   *See* SOF, ¶ 17 (DA229-242), *see also* SOF, ¶ 18 DA252 (Isaacson Report at ¶

---

[2] "DA___" refers to the corresponding page number in Defendants' attached Appendix.

3

27).   These four copies formed the initial basis for the survey and analysis presented in the Expert Report of Dr. Bruce Isaacson measuring the likelihood of confusion at issue in this case.   *See generally* DA245-551 (Expert Report (and Exhibits) of Dr. Bruce Isaacson); *see also id*. at DA252-253 (Isaacson Report, ¶¶26-29) (explaining the basis for the test and control images used in the survey).   Plaintiff submitted no expert report in this case and the deadline for doing so has passed.   *See* SOF, ¶ 37.

## **ARGUMENT**

## I.   **THE LEGAL STANDARD FOR SUMMARY JUDGMENT**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   A genuine issue of material fact exists when the evidence presented would permit a reasonable jury to find in favor of the non-movant.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   In making its determination on summary judgment, the court will draw all justifiable inferences in favor of the non-movant.   *Anderson*, 477 U.S. at 255 (1986).   However, the non-movant must establish the existence of a material element on which it will bear the burden of proof at trial.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).   As such, where the non-moving party fails to make a sufficient showing as to the existence of an essential element for which he bears the burden of proof, summary judgment is appropriate.   *Id.*

"[C]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment."   *RSR Corporation v. International Insurance Company*, 612 F.3d 851, 857 (5th Cir. 2010).   "Summary judgment is as appropriate in a trademark infringement case as in any other case and should be granted or denied on the same principles."   *WSM, Inc. v.*

4

*Tennessee Sales Co.*, 709 F.2d 1084, 1086 (6th Cir. 1983); *see also Beef/Eater Restaurant, Inc. v. James Burrough, Ltd.*, 398 F.2d 637 (5th Cir. 1968) (affirming grant of summary judgment to mark holder).

## II.   BURDEN OF PROOF AND ELEMENTS

### A.   ISSUE 1 -- FEDERAL TRADEMARK INFRINGEMENT

The government bears the burden of proof by a preponderance of the evidence with respect to each of the elements of its federal trademark infringement.   To prove federal trademark infringement, the government must establish that:   (1) it owns a validly[3] registered trademark; (2) Namer's is responsible for an unauthorized use of the mark; and (3) Namer's use is likely to cause confusion among consumers in the marketplace.   *See* 15 U.S.C. § 1114(a);[4]

### B.   ISSUE 2 – LACHES

Namer bears the burden of proof by a preponderance of the evidence with respect to the elements of Laches.   "Laches comprises three elements:   (1) delay in asserting one's trademark rights, (2) lack of excuse for the delay, and (3) undue prejudice to the alleged infringer caused by the delay."   *Board of Supervisors for Louisiana State University Agricultural and Mechanical*

---

[3]  The Lanham Act provides in pertinent part that marks registered on the Principal Register shall be prima facie evidence of the validity of the registered mark, of its registration, of the registrant's ownership, and of the registrant's exclusive right to use the mark.   *See* 15 U.S.C. § 1115(a).

[4]  15 U.S.C. § 1114(a) provides, in relevant part:

(1) Any person who shall, without the consent of the registrant–

  (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive;

  . . .

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

5

*College v. Smack Apparel Co.*, 550 F.3d 465, 489-90 (5th Cir. 2008) (citations omitted).

### C.       ISSUE 3 – GENERICNESS

"[W]hether a term is a generic name is a question of fact; evidence of public understanding of the term may be obtained from 'any competent source, such as consumer surveys, dictionaries, newspapers and other publications.'"   J. THOMAS MCCARTHY, 2 MCCARTHY ON TRADEMARKS, § 12.12 (Proving and disproving genericness —Burden of proof) (4th ed.2014) at n.1 (quoting *In re Northland Aluminum Products, Inc.*, 777 F.2d 1556, 1559 (Fed. Cir. 1985)). "[F]ederal registration [of a mark] constitutes a strong presumption that the term is not generic and [the challenger] bears the burden of overcoming the presumption."   *Id.*

### D.       ISSUE 4 – INJUNCTIVE RELIEF

A party seeking a permanent injunction must demonstrate that (1) it has suffered irreparable injury, (2) there is no adequate remedy at law, (3) that, considering the balance of hardships between the parties, a remedy in equity is warranted, and (4) that it is in the public's interest to issue the injunction.   *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

## III.    ROBERT NAMER HAS INFRINGED THE GOVERNMENT'S SERVICE MARK

The elements for trademark[5] infringement pursuant to 15 U.S.C. § 1114(a) were set forth above in Section II.A.   There can be no dispute that the BBG owns the mark in suit and that Namer is responsible for unauthorized use of the mark.   *See* Plaintiff's Answer to Defendant's

---

[5] Service Marks are treated no differently than trademarks under the Lanham act.   *See* 15 U.S.C. § 1053 ("service marks . . . when registered . . . shall be entitled to the protection provided in this chapter in the case of trademarks . . . .").

Counterclaim, ¶ 5, Rec. Doc. No. 40; SOF, ¶ 5; SOF at ¶¶ 10-12 (DA90, DA111-112); Complaint at

¶31.   Thus, elements 1 and 2 are admitted and proven.

To prove the third element, a mark hold must establish that accused infringer's use of the

mark "creates a likelihood of confusion in the minds of potential customers as to the source,

affiliation, or sponsorship" of the product at issue.   *Westchester Media v. PRL USA Holdings, Inc.*,

214 F.3d 658, 663 (5th Cir. 2000).   For likelihood of confusion, courts in the Fifth Circuit apply a

non-exhaustive list of eight factors comprising the so-called "digits of confusion," namely:

> (1) the type of mark allegedly infringed, (2) the similarity between the two marks,
> (3) the similarity of the products or services, (4) the identity of the retail outlets and
> purchasers, (5) the identity of the advertising media used, (6) the defendant's intent,
> (7) any evidence of actual confusion, and (8) the degree of care exercised by
> potential purchasers.

*Smack Apparel*, 550 F.3d at 478.   The "digits of confusion" are not elements of mark holder's

claim, but "instead comprise a nonexhaustive collection of considerations that may be relevant to

the ultimate factual determination—are the actions of the [accused infringer] likely to create

confusion?"   *Society of Fin. Examiners v. National Ass'n of Certified Fraud Examiners*, 41 F.3d

223, n.15 (5th Cir. 1995).   "The 'digits of confusion' are not exhaustive, and no single factor is

dispositive."   *National Business Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 532 (5th

Cir. 2012).   "[The digits] do not apply mechanically to every case and can only serve as guides, not

as an exact calculus."   *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 485 (5th Cir.

2004).   "[I]t is often possible to reach a conclusion with respect to likelihood of confusion after

considering only a subset of the factors."   *Brookfield Communications, Inc. v. West Coast*

*Entertainment Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999).

**A.      (1) THE TYPE OF MARK ALLEGEDLY INFRINGED**

Defendants' mark is strong.   United States Patent and Trademark Office Registration Number 3,205,170 is *prima facie* evidence that continuously since the year 1942 the federal government has used the mark VOICE OF AMERICA to identify its news and entertainment content and to distinguish such content from those provided by others, by, among other things, prominently displaying, broadcasting, and transmitting the mark VOICE OF AMERICA in connection with its news and entertainment content.   *See* DA1; SOF, ¶1.

Independent of any evidentiary presumption afforded by registration, Exhibit 4 to this motion proves that in 1957, President Eisenhower acknowledged the widespread reputation of the government's Voice of America broadcast.   DA88; SOF, ¶9.   Finally, the Declaration of Steven Springer, a Senior Executive Producer for the Voice of America broadcast, further supports the conclusion that "the Voice of America is a household name.   The U.S. government has been using the name Voice of America continuously since 1942 and, as a result, the name has acquired an extensive worldwide reputation, as well as significant goodwill."   DA555 (Springer Decl. at ¶ 12); SOF, ¶46.

Accordingly, this factor weighs heavily in favor of the government.

**B.      (2) THE SIMILARITY BETWEEN THE TWO MARKS**

The government's mark and Namer's implementation are identical or virtually identical. *Compare* DA1& SOF, ¶4; *with* SOF, ¶20 (relying on DA192-DA228 relating to <thevoiceofamerica.com>) & SOF, ¶21 (relying on DA229-DA242 relating to <hottalkradio.com>).   As "VOICE OF AMERICA" and "thevocieofamercia.com" are, for all intents and purposes, identical in terms of sight, sound, and meaning, the similarity factor weighs

8

heavily in favor of the government.   *See Brookfield Communications*, 174 F.3d at 1055 (reaching

the same conclusion as between the mark "MovieBuff" and the accused use "moviebuff.com").

### C.        (3) THE SIMILARITY OF THE PRODUCTS OR SERVICES

The Declaration of Steven Springer provides that "the Voice of America (VOA) is a

dynamic multimedia news organization funded by the U.S. Government that delivers accurate,

balanced, and comprehensive news and information to an international audience via radio,

television, the internet and mobile devices."   DA554 (Springer Decl. at ¶ 7), SOF, ¶43; *see also*

SOF, ¶¶44-45 (referencing transmissions of content over the internet, through social media, and to

mobile devices).   Similarly, Mr. Namer characterized the website thevoiceofamerica.com as a

"news information portal" including commentary, political news, and economic news.   *See*

DA116-117 (Namer Dep. at Page 22, l. 16 – Page 23, l. 14).   Accordingly, the similarity of services

factor also weighs in favor of the government.

### D.        (4) THE IDENTITY OF THE RETAIL OUTLETS AND PURCHASERS

As established above, for both the government's use and Namer's website content is

transmitted and published over the internet.   Beyond this similarity, this factor is indeterminate

because Mr. Namer admitted at his deposition that he had no information or data of any kind

indicating who the viewers of thevoiceofamerica.com or hottalkradio.com are or were.   *See*

DA114-117 (Namer Dep. at Page 20, l. 7 – Page 22, l. 15).

### F.        (6) THE ACCUSED INFRINGER'S INTENT

At his deposition, Mr. Namer admitted that he was aware of the government's Voice of

America broadcast during the time frame that he was working on his radio program, which was

between 1991 and 2005.   *See* SOF, ¶¶33-34 (DA118-121).   Accordingly, plaintiff was aware of

the government's use of the words "VOICE OF AMERICA" at least for some portion of time he

was posting news content on the internet at thevoiceofamerica.com or hottalkradio.com.

As explained by the Court in *Brookfield Communications*:

In the Internet context, in particular, courts have appropriately recognized that the
intentional registration of a domain name knowing that the second-level domain is
another company's valuable trademark weighs in favor of likelihood of confusion.

174 F.3d at 1066.   In this case, there is no direct evidence that Mr. Namer registered

"thevoiceofamerica.com" with the principal intent of confusing consumers.   However,

circumstantial evidence suggests Mr. Namer intended his website to appear affiliated or endorsed

by the government.

For example, the accused website includes a red, white, and blue symbol or seal, reproduced

below, that is reminiscent of the eagle design on a United States quarter dollar.



DA203.   The symbol appears again in the banner heading of the website, an image of which is

reproduced below:



DA192.   Mr. Namer admitted that he approved, liked, and accepted the symbol design.   *See*

DA126 (Page 32, ll. 4-25).   Beyond this circumstantial evidence of intent. no disclaimer of any

kind appears on either website.   *See* DA192-242.   While the use of a disclaiming indicating a lack

10

of affiliation or sponsorship often does little to alleviate potential consumer confusion, the use of a disclaimer can be probative of a lack of intent to confuse.   *See CCA and B, LLC v. F ? W Media Inc.*, 819 F. Supp. 2d 1310, 1328 (N.D. Ga. 2011) ("Where [an accused infringer] included both a clear disclaimer and some form of criticism, [the intent] factor has been considered to weigh in favor of the [accused infringer].").   The lack of any disclaimer on the attached examples, *see* DA192-242, weighs in favor of Defendants for this factor.

### G.   (7) ANY EVIDENCE OF ACTUAL CONFUSION

For this factor "actual confusion need not be proven . . . ."   *Beef/Eater Restaurant, Inc. v. James Burrough, Ltd.*, 398 F.2d at 639.   "Surveys are, for example, routinely admitted in trademark and false advertising cases to show actual confusion, genericness of a name or secondary meaning, all of which depend on establishing that certain associations have been drawn in the public mind."   *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 225 (2d Cir. 1999); *see also Exxon Corp. v. Texas Motor Exchange of Houston, Inc.*, 628 F.2d 500, 506 (5th Cir. 1980) ("Parties often introduce survey evidence in an effort to demonstrate that there is a likelihood of confusion."); 507 ("The survey results themselves indicate a high possibility of confusion between Texon and EXXON."), 508 (reversing as clear error District Court conclusion that there was no likelihood of confusion between Texon and EXXON).

In this case, the survey and analysis presented in the Expert Report of Dr. Bruce Isaacson was based on 640 initial interviews, which resulted in a final set of 599 respondents for the survey. *See* DA258 (Isaacson Report, ¶45), SOF, ¶24.   Survey respondents were segregated into four cells and shown either a test image of thevoiceofamerica.com or a control image used to remove background noise.   *See* DA 252-255 (Isaacson Report, ¶¶25-31, 34), SOF, ¶25.   No survey

respondents mentioned Robert Namer in response to survey questions inquiring as to the source or affiliation for the test images.   *See* SOF, ¶¶26-27.   The net level of all measured confusion was 19.1%.   *See* DA264-266 (Isaacson Report ¶¶ 65-71, Tables D-F), SOF, ¶28.   Dr. Isaacson concluded that "that there is a significant likelihood of confusion between the website operated at www.thevoiceofamerica.com and the Voice of America."   *See* DA266 (Isaacson Report ¶ 71), SOF, ¶29.

With a net level of confusion of 19.1%, effectively one of every five visitors to Namer's website would be confused as to the source or affiliation with Defendants.   And, numerous courts have found likelihood of confusion surveys with percentage results between 10 percent and 20 percent probative of a likelihood of confusion.   *See Humble Oil v. American Oil Co.*, 405 F.2d 803, 817 (8th Cir. 1969) ("The percentage figure varies from 11% to as high as 49%. The lower figure itself is not an insignificant percentage."); *Starbucks Corp. v. Samantha Lundberg*, Civ. No. 02-948, 2005 WL 3183858 at *9 (D. Or. November 29, 2005) ("The percentage of consumers likely to be confused can be in the range of 10 to 15 percent or even lower."); *Miles Labs. Inc. v. Naturally Vitamin Supplements. Inc*., 1 U.S.P.Q.2d 1445, 1457 (T.T.A.B. 1987) ("surveys disclosing likelihood of confusion ranging from 11% to 25% have been found significant."); *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 279 (7th Cir. 1976) ("We cannot agree that 15% is 'small.'"); *Jockey Int'l, Inc. v. Burkard*, 185 U.S.P.Q. 201, 203 (S.D. Cal. 1975) (11.4%): *James Burrough Ltd. v. Lesher*, 309 F. Supp. 1154, 1160 n.6 (S.D. lnd. 1969) (11%); *Mutual of Omaha Ins. Co. v. Novak*, 836 F.2d 397, 400 (8th Cir. 1987) (survey evidence showing 10% likelihood of confusion sufficient).

For likelihood of confusion survey percentages under 10 percent, courts have generally

ruled against a finding of likelihood of confusion, *see Henri's Food Products Co. Inc. v. Kraft. Inc.*, 717 F.2d 352, 359 (7th Cir. 1983) (7.6% found weighing against infringement), with some notable exceptions.  *See Grotrian v. Steinway*, 365 F. Supp. 707, 716 (S.D.N.Y. 1973) (7.7% confusion held as strong evidence of likelihood of confusion).

There is a significant likelihood of confusion between the website operated at www.thevoiceofamerica.com and the Voice of America.  *See* DA266 (Isaacson Report ¶ 71), SOF, ¶29.  This factor weighs heavily in favor of Defendants.

### H.      (8) THE DEGREE OF CARE EXERCISED BY POTENTIAL PURCHASERS

Again, this factor is indeterminate because Mr. Namer admitted at his deposition that he had no information or data of any kind indicating who the viewers of thevoiceofamerica.com or hottalkradio.com are or were.  *See* DA114-117 (Namer Dep. at Page 20, l. 7 – Page 22, l. 15).

### I.      THE DIGITS OF CONFUSION SUPPORT SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS

As reflected above, the government's mark is strong, the mark and Namer's use are identical, there is a similarity of services, circumstantial evidence of intent, and unrebutted survey evidence establishing a significant likelihood of confusion.   There can be only one conclusion: Namer has infringed the government's mark pursuant to 15 U.S.C. § 1114(a).

As set forth in *Brookfield Communications*, "[w]hen a firm uses a competitor's trademark in the domain name of its web site, users are likely to be confused as to its source or sponsorship. . . . Th[is] form[] of confusion [is] exactly what the trademark laws are designed to prevent."   174 F.3d at 1066.   For the same reasons, the Court should grant summary judgment in favor of Defendants pursuant to 15 U.S.C. § 1114(a).

13

IV.   **THE DISCOVERY OF PLAINTIFF'S WEBSITE IN 2011 AND THE DOCTRINE OF PROGRESSIVE ENCROACHMENT REBUTS ANY CLAIM NAMER HAS FOR LACHES**

Namer bears the burden of proof by a preponderance of the evidence with respect to the equitable defense of Laches.   Along with the Complaint, Namer included a letter dated February 7, 2000, from the Broadcasting Board of Governors.   *See* Rec. Doc. No. 1-5.   However, that letter makes absolutely no reference to the subject websites <thevocieofamerica.com> or <hottalkradio.com>.   *See* Rec. Doc. No. 1-5.   Instead, the letter is exclusively directed to *radio programming*.   For example, the letter is addressed to Mr. Namer of "WTIX Radio" and provides that "[i]t has been brought to our attention that you may be using the name 'Voice of America' and the initials 'VOA' in connection with *a radio program* you produce."   *Id.* (emphasis added). And, Mr. Namer admitted during his deposition that his radio program ended in 2005.   *See* DA120-121, SOF, ¶34.

The Declaration of DANIEL DZARA attached hereto provides in pertinent part that:

I was first notified that the domain name thevoiceofamerica.com was being used to host a website in April 2011.   I brought this information to the attention of my supervisors, which resulted in our office sending the letter dated April 21, 2011 to plaintiff.

DA243 (Dzara Decl. at ¶ 4), SOF, ¶35.   The letter of April 21, 2011 is provided in the attached appendix.   *See* DA551-52 (Ex. 13).   Accordingly, plaintiff cannot establish that the government had notice of his websites before 2011.[6]   *See Brookfield Communications*, 174 F.3d at 1061

---

[6] As set forth in SOF, ¶¶ 39-41, Plaintiff has not served a single interrogatory, document request, or deposition notice in this case, which Plaintiff filed on September 7, 2012.   The government's motion to compel discovery responses against plaintiff was granted in an Order dated April 7, 2014. *See* Rec. Doc. No. 52.   In addition, Plaintiff was ordered to supplement prior discovery responses following a hearing on the government's motion for sanctions.   *See* Rec. Doc. No. 63 (Order of May 14, 2014).   The Order of May 14, called for, *inter alia*, Plaintiff to supplement/correct

14

("Although we have applied laches to bar trademark infringement claims, *we have done so only where the trademark holder knowingly allowed* the infringing mark to be used without objection for a lengthy period of time.") (emphasis added).   In other words, plaintiff cannot establish that the government "knowingly allowed"[7] him to infringe its mark on the internet because the government only discovered Namer's websites in 2011.   *See* SOF, ¶¶35-36.

In this case, even if plaintiff could establish the elements of delay and undue prejudice, the doctrine of progressive encroachment justifies the fact that the government never sued Namer for the content of his radio program between the date of the letter in 2000 and the termination of the radio program in 2005.   *See* SOF, ¶¶34-36.   For example, as explained by Professor McCarthy in his treatise:

> Under the doctrine of 'progressive encroachment,' a trademark owner *is not forced by the rule of laches to sue until the likelihood of confusion caused by the accused use presents a significant danger to the mark*. A relatively low level infringement or use of a similar mark in a different product or service line or in a different territory does not necessarily trigger an obligation to immediately file suit.
> .

J. THOMAS MCCARTHY, 2 MCCARTHY ON TRADEMARKS, § 31:20 (Progressive encroachment and other changes in the challenged use) (4th ed.2014) (emphasis added).   As the Second Circuit explained:

---

interrogatory answers to provide the names, addresses, and phone numbers of a "Kim" and "Raphael" whose last names Namer refused to provide at his deposition.   *See* DA177-179.   Upon receiving the ordered supplementation, the missing last names were revealed to be "Namer," the very same last name as Plaintiff.   *Compare* Rec. Doc. No. 1, ¶1, *with* DA91 (listing a Kim Namer and a Raphael Namer).

[7] In addition, Namer cannot credibly maintain that the BBG "knowingly allowed" his use "without objection."   *Brookfield Communications*, 174 F.3d at 1061.   To the contrary, the letter from 2000 expressly requests that Namer "immediately cease using this name and initials in connection with your programming."   Rec. Doc. No. 1-5.   Indeed, Namer's continued use provides further evidence in support of the intent factor for confusion.   *See infra* at Section III.F.

By using the mark in a different manner or in a new geographic area, [an accused infringer] may exceed the scope of the [mark holder's] consent and be exposed to liability for that extra-consensual use . . . . The doctrine of progressive encroachment . . . focuses the court's attention on the question of whether the [accused infringer], after beginning its use of the mark, redirected its business so that it more squarely competed with [the mark holder] and thereby increased the likelihood of public confusion of the marks.

*ProFitness Physical Therapy Center v. Pro-Fit Orthopedic and Sports Physical Therapy P.C.*, 314 F.3d 62, 69-70 (2d Cir. 2002); *see also Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 367(6th Cir. 1985)(plaintiff's failure to object to uses in limited territories "does not bar it from objecting later to widespread use of the mark").   Accordingly, under the doctrine of progressive encroachment, any notice Defendants' had of Plaintiff's limited-region radio program between 2000 and 2005, when it ended, does not bar the BBG's right to prevent plaintiff's expanded worldwide infringement on the internet once it discovered the websites in 2011.   *See* SOF, ¶¶35-36.   As a result, Namer cannot demonstrate a triable issue of fact on the defense of laches and summary judgment is justified in Defendants' favor.

## V.     NAMER CANNOT MEET HIS BURDEN TO OVERCOME THE STRONG PRESUMPTION OF VALIDITY HERE BECAUSE HE HAS PRODUCED NO EVIDENCE OF GENERICNESS, EXPERT OR OTHERWISE

"[F]ederal registration [of a mark] constitutes a strong presumption that the term is not generic and [the challenger] bears the burden of overcoming the presumption."   J. THOMAS MCCARTHY, 2 MCCARTHY ON TRADEMARKS, § 12.12 (Proving and disproving genericness —Burden of proof) (4th ed.2014).   Accordingly, to survive summary judgment, Namer must come forward with affirmative evidence to overcome the strong presumption of validity for the Mark in suit.

First, Namer submitted no expert report to carry this burden and the deadline for doing so

16

has passed. *See* SOF, ¶37. The leading treatise on Trademark law provides that consumer survey evidence is practically required to establish the defense of genericness:

> Consumer surveys have become almost de rigueur in litigation over genericness. Judges are now used to survey evidence and often expect to receive evidentiary assistance by surveys in resolving generic disputes. A litigant who alleges that a designation is not a valid trademark because it is perceived as a generic name of a product or service and does not introduce a survey to support this challenge may be viewed as less than serious by some judges.

J. THOMAS MCCARTHY, 2 MCCARTHY ON TRADEMARKS, § 12.12 (Surveys to determine genericness) (4th ed. 2014). Moreover, beyond the absence of a consumer survey, Namer has failed to produce any evidence of public understanding of the term "VOICE OF AMERICA" from "any competent source, such as consumer surveys, dictionaries, newspapers and other publications." J. THOMAS MCCARTHY, 2 MCCARTHY ON TRADEMARKS, § 12.12 (Proving and disproving genericness —Burden of proof) (4th ed.2014) at n.1 (quoting *In re Northland Aluminum Products, Inc.*, 777 F.2d 1556, 1559 (Fed. Cir. 1985)); s*ee also* SOF, ¶42.

As a result, Namer cannot demonstrate a triable issue of fact that the government's mark is generic and the government is entitled to summary judgment in its favor on this affirmative defense pled by Namer.

## VI. DEFENDANTS WOULD BE IRREPARABLY HARMED IF NAMER'S INFRINGEMENT WAS PERMITTED TO CONTINUE

A party seeking a permanent injunction must demonstrate that (1) it has suffered irreparable injury, (2) there is no adequate remedy at law, (3) that, considering the balance of hardships between the parties, a remedy in equity is warranted, and (4) that it is in the public's interest to issue the injunction. *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

17

"[In] ordinary trademark infringement actions . . . complete injunctions against the infringing party are the order of the day."   *Angel Flight of Georgia, Inc. v. Angel Flight America, Inc.*, 522 F.3d 1200, 1209 (11th Cir. 2008) ("The reason is simple: the public deserves not to be led astray by the use of inevitably confusing marks—even in cases in which more than one entity has a legal right to use the mark.").

The Declaration of STEVEN SPRINGER attached hereto provides in pertinent part that:

I have been provided with and reviewed copies of the website, <thevoiceofamerica.com> on three dates:   October 10, 2011; December 22, 2011; and August 19, 2011.   I understand these three documents have been produced as documents bearing Bates Numbers GOV000003-39[8] in the above-referenced lawsuit.

DA555 (Springer Decl. at ¶ 13), SOF, ¶47.   Paragraph 16 of the same declaration provides that:

someone viewing the website <thevoiceofamerica.com> (as reflected in Bates Numbers GOV000003-39) would think that VOA holds certain philosophical and ideological views such as those views reflected by, for example, the commentary:

"Government ineptness is more damaging tha[n] terrorists."

GOV000003-4 [DA192-193];

"Blacks would get funding if they offered valuable research ideas - there is no conspiracy."

GOV000029 [DA218];

"The 24% that approved are blacks, fools and those on public subsidies"

GOV000033[DA222].

DA556 (Springer Decl. at ¶ 16). The Declaration continues providing in pertinent part that:

The world-wide reputation and goodwill associated with the Voice of America would be irreparably harmed if someone viewing the website <thevoiceofamerica.com> confused VOA as being a source of that site's content or

---

[8]  Documents bearing Bates Numbers GOV000003-39 correspond to appendix pages DA192-228.

even confused VOA as being affiliated or connected with the site's content.

DA555-56 (Springer Decl. at ¶ 14), SOF, ¶48.   The Declaration continues providing in pertinent

part that:

> The perception resulting from each of the examples presented above . . . would
> conflict with the principles embodied in the VOA Charter . . . and would irreparably
> harm the reputation and goodwill of VOA if permitted to continue.

DA557 (Springer Decl. at ¶ 18), SOF, ¶49.

In *Audi AG v. D'Amato*, the Sixth Circuit affirmed the grant of a permanent injunction to

remedy trademark infringement on the internet.   The Court found that all four *ebay* factors were

met in the following analysis:

> D'Amato's website used Audi's trademarks in its domain name and in the goods and
> services sold on it. If the district court did not grant an injunction, Audi would be
> irreparably harmed by consumers on D'Amato's site purchasing counterfeit items,
> instead of those that were lawfully sold by Audi. So long as www. audisport. com
> stayed online, there was potential for future harm, and therefore, there was no
> adequate remedy at law. It was in the public's interest to issue the injunction in order
> to prevent consumers from being misled. In balancing the hardships between each
> party, we note that D'Amato faces no hardship in refraining from willful trademark
> infringement, whereas Audi faces hardship from loss of sales. Thus, injunctive relief
> is warranted because D'Amato's website did not fall under the category of protected
> speech; rather, it attempted to use Audi's good will to make a profit.

469 F.3d at 550.   The *eBay* factors are met here for similar reasons.   Defendants have suffered

irreparable injury due to the likelihood of confusion here.   *See* SOF, ¶¶28-29, 48-49.   Further, as a

vital part of U. S. foreign policy, the Defendants' mission to other countries will be severely and

irreparably damaged if Namer is permitted to continue to broadcast such sentiments and comments

under the Voice of America mark.   The BBG's audiences will tune out in the face of such positions

and will improperly impute such sentiments to the Voice of America, thereby harming the BBG's

statutory requirement "to serve as a consistently reliable and authoritative source of news . . . that is

19

accurate, objective and comprehensive." 22 U.S.C. § 6202(c). Just as in *Audi*, if Namer retains/regains possession of <thevoiceofamerica.com>, there will be a potential for continued future harm such that there is no adequate remedy at law available.

In balancing the hardships between each party, Namer will suffer no hardship since Defendants have no objection to his continued use of <hottalkradio.com> so long as he amends/edits the content therein to remove any references to Defendants' mark. Namer can continue to seek advertising revenue on <hottalkradio.com>, *see* SOF ¶¶30-31, he simply will not be able to do so on the basis of confusing the public and at the expense of the good will generated by Defendants' mark for over 70 years. Finally, a permanent injunction will serve the public interest by preventing confusion in the marketplace and "protecting trademarks generally as well." *Brookfield Communications*, 174 F.3d at 1066.

WHEREFORE, the United States prays that the Court GRANT this motion in all respects, enter JUDGMENT in favor of the government for each of the issues 1-4 above, and enter an INJUNCTION according to the terms of the attached PROPOSED ORDER AND INJUNCTION.

Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

JOHN FARGO
Director

*s/David M. Ruddy*
DAVID M. RUDDY, T.A.
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
E-mail: david.ruddy@usdoj.gov
Washington, D.C. 20530
Telephone: (202) 353-0517
Facsimile: (202) 307-0345
E-mail: david.ruddy@usdoj.gov
Appearing pursuant to 28 U.S.C. § 517

KENNETH POLITE, JR.
United States Attorney

SHARON D. SMITH
Assistant United States Attorney
LA Bar Roll No. 17146
650 Poydras Street, Suite 1600
New Orleans, Louisiana   70130
Telephone:   (504) 680-3004
E-mail: sharon.d.smith@usdoj.gov

Dated: May 22, 2014                    Attorneys for the United States

21

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true copy of the foregoing has been served upon all counsel for parties by ECF or mailing the same to each, properly addressed and postage prepared this 22nd day of May 2014 to:

**WAYNE A. JONES, ESQ.**
6520 General Haig St.
New Orleans, La. 70124
Attorney for Plaintiff, Robert Namer
Telephone: (504) 373-3233

*s/David M. Ruddy*
DAVID M. RUDDY
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
E-mail: david.ruddy@usdoj.gov
Washington, D.C. 20530
Telephone: (202) 353-0517
Facsimile: (202) 307-0345
Appearing pursuant to 28 U.S.C. § 517

22